Rel: July 31, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2025-0981

_____

**Kathryn Leigh Kennedy**

**v.**

**Scott Aaron Kennedy**

**Appeal from Tuscaloosa Circuit Court**
**(DR-21-900587.01)**

EDWARDS, Judge.

Kathryn Leigh Kennedy ("the mother") appeals from a judgment entered by the Tuscaloosa Circuit Court ("the trial court") that modified the child-support obligation of Scott Aaron Kennedy ("the father").

## Procedural Background

The father and the mother were divorced by a judgment entered by the trial court entered on March 17, 2023; that judgment was amended on May 23, 2023, when the trial court adopted the terms of an amended property-settlement agreement entered between the parties.[1]   On January 2, 2024, the father filed a petition in the trial court, which he later amended on April 19, 2024.  In his petition, as amended, the father sought to hold the mother in contempt of court for allegedly violating a provision of the parties' divorce judgment that prohibited either party from having an overnight guest of the opposite sex not related by blood or marriage and with whom he or she had a romantic relationship when the parties' children were present.  The father also sought a modification of certain provisions of the parties' amended divorce judgment, including a modification of the award of joint physical custody of their two children, T.W.K. and C.R.K., whose dates of birth are February 5, 2015, and March 21, 2012, respectively, and a modification of his child-support obligation.

---

[1]The record on appeal does not contain copies of the parties' March 17, 2023, divorce judgment, the parties amended property-settlement agreement, or the May 23, 2023, amended divorce judgment that adopted the terms of the amended property-settlement agreement.

2

Lastly, the father requested that the trial court terminate his continuing obligation to contribute to the children's 529 plan investment accounts each year and that the trial court terminate his obligation to purchase vehicles for the children.

On January 25, 2024, the mother filed an answer to the father's petition, and the mother filed a counterclaim seeking to hold the father in contempt of court for his alleged violation of a provision of the divorce judgment that prohibited each party from making disparaging remarks about the other parent to or in the presence of the children. The mother's counterclaim also sought a modification of the physical custody of the children.

A trial was conducted on July 21, 2025, and, on July 24, 2025, the trial court entered a judgment that, in pertinent part, denied both parties' requests to modify the children's physical custody; denied both parties' requests to hold the other parent in contempt of court; reduced the father's monthly child-support obligation to $549; and denied all other relief the parties requested.

On August 22, 2025, the mother filed a postjudgment motion to alter, amend, or vacate the July 24, 2025, judgment or, alternatively, to

3

grant a new trial. The father did not seek postjudgment relief. Following a hearing, the trial court, on October 2, 2025, entered an amended judgment that increased the father's child-support obligation to $823 per month. All other requested relief was denied. The mother appealed.

<u>The Evidence</u>

April Gray testified that she was employed by Sokol Park Chiropractic ("Sokol"), which, she said, was solely owned by the father; she was responsible for filing insurance claims and for patient billing. Gray began working in the insurance-billing field in 2014 with a previous employer who also provided chiropractic services. Within the three years preceding the trial, she said that she had observed changes in insurance coverage for chiropractic services that had resulted in higher deductibles and higher copays for patients. According to Gray, the change in insurance coverage had also resulted in a loss of patient revenues because, Gray said, some patients were unable to afford the higher out-of-pocket costs. According to Gray, two chiropractors who Sokol employed had also experienced revenue losses attributable to the changes in insurance coverage. Gray said that Sokol had also experienced a change in staffing resulting from a physical therapist and

4

a massage therapist leaving the practice, which, she said, had caused a decrease in the services Sokol offered and a reduction in revenue.

Gray confirmed that the father had total control of Sokol, had total control of his work calendar, and had total control of Sokol's finances. Sokol maintained full-day business hours Monday through Thursday. On Fridays and Saturdays, Sokol was open from 8:00 a.m. until 12:00 p.m., which, Gray said, had been the father's administrative decision.

Don Wood, a certified public accountant, testified that he had prepared the father's individual income-tax returns for approximately 23 years. Wood said that, because Sokol is a single-member limited-liability company, Sokol's taxes are included on the father's individual income-tax return and do not require Sokol to file a separate return. According to Wood, Sokol's gross receipts had been declining year-over-year. For the 2021 tax year, Sokol's gross receipts totaled $1,110,409. For the 2022 tax year, Sokol's gross receipts were $1,020,614. For the 2023 tax year, Sokol's gross receipts totaled $955,357. For the 2024 tax year, Sokol's gross receipts had fallen further to $866,017.

In terms of net pay, in the 2021 tax year, the father earned $291,046; in the 2022 tax year, the father earned $172,480; in the 2023

5

tax year, the father earned $172,204; and in the 2024 tax year, the father earned $127,937. Wood attributed Sokol's declining gross receipts and the father's decline in pay to changes in the insurance industry pertaining to reimbursements and to increased operating costs, which, Wood said, was a byproduct of inflation. Wood testified that he had observed similar declining gross receipts, which he also attributed to insurance-reimbursement changes, for 8 to 10 other physicians for whom he prepared income-tax returns. Wood opined that, for the 2024 tax year, the father's monthly gross income was $11,619.

The father testified that, in 2019, he left his employment with Agee Chiropractic and that, in February of that year, he opened Sokol. The father said that his income had been steadily declining in the recent years preceding the trial, which he attributed to the combined effect of insurance-reimbursement changes, increased overhead costs, as well as Sokol's loss of a physical therapist and a massage therapist and the additional revenue that they had generated. The father confirmed that

Sokol employed a second chiropractor and that the father received a percentage of the revenue that chiropractor generated.[2]

The father, who was 51 years old at the time of the trial, said that, in the 2 years preceding the trial, he had experienced health issues. Dr. Loren James, an orthopedic surgeon, diagnosed the father with bilateral carpal tunnel syndrome and compartment syndrome of the elbow. Dr. James had recommended that the father undergo surgery to address those issues, but the father had not had that surgery at the time of the trial. Additionally, in 2023, the father underwent surgery to repair bilateral inguinal hernias, which had prevented the father from working for a couple of weeks. The father also suffers from plantar fasciitis and irritable bowel syndrome, which, he said, had also affected his ability to work. In a Child-Support-Obligation Income Statement/Affidavit ("income affidavit"), see Rule 32(E), Ala. R. Jud. Admin., that was prepared by the father in December 2022, the father indicated that he earned $24,770 in gross income per month. In a separate income affidavit

---

[2]The father did not disclose what income he received from the revenue the other chiropractor generated.

that was prepared for trial in the current modification case, the father indicated that he earned $11,616 in gross income per month.[3]

On cross-examination, the father admitted that he had indicated in his March 11, 2024, discovery responses that he earned approximately $13,333 in gross income per month. He also admitted that he had generated two personal financial statements for the Robertson Banking Company ("RBC") -- one in October 2023 and a second in March 2024. In the financial statement submitted to RBC in October 2023, the father indicated that he earned $30,000 per month in gross income. In the financial statement submitted to RBC in March 2024, which was prepared approximately one week after he prepared his March 11, 2024, discovery responses, the father indicated that he earned $270,000 in gross income per year, which equates to $22,500 in monthly gross income. The father disputed the accuracy of both personal financial statements and said that he had made a mistake regarding his gross monthly income on both forms.

The mother testified that she was the manager at Tuscaloosa Pediatric Dentistry, where she was earning $26 per hour at the time of

---

[3]The income affidavit is not dated.

trial. An income affidavit the mother signed and offered as a trial exhibit indicated that the mother earned $4,560 in gross income per month and that she provided dental insurance for the children at a cost of $86 per month. In addition to her earned income, the mother said that her employer also provided yearly bonuses. The mother had received a bonus in the 2024 tax year, but she could not recall whether that bonus had been for $2,500 or $3,000. The mother conceded that she had not included her yearly bonus in her income affidavit.

## Standard of Review

> "'"When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. Thrasher v. Wilburn, 574 So. 2d 839, 841 (Ala. Civ. App. 1990). Further, matters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. Id."

> "'Spencer v. Spencer, 812 So. 2d 1284, 1286 (Ala. Civ. App. 2001). However, the trial court's application of law to facts is reviewed de novo. See Ladden v. Ladden, 49 So. 3d 702, 712 (Ala. Civ. App. 2010).' "

Burkett v. Burkett, 367 So. 3d 409, 418 (Ala. Civ. App. 2022) (quoting Jones v. Jones, 101 So. 3d 798, 802 (Ala. Civ. App. 2012)).

9

Discussion

On appeal, the mother first contends that the trial court erred when it determined the father's monthly gross income for the purpose of calculating his monthly child-support obligation. The mother specifically argues that the trial court erred to reversal when it determined that the father earned $11,616 in gross income per month without reconciling the personal financial statements that he had prepared for RBC in October 2023 and March 2024, in which he indicated that he earned $30,000 per month and $22,500 per month, respectively, and without reconciling the father's discovery responses, in which he indicated that he earned $13,333 per month in gross income. The mother primarily relies on Hubbard-Hall v. Hubbard, 697 So. 2d 486 (Ala. Civ. App. 1997), and Wright v. Wright, 19 So. 3d 901 (Ala. Civ. App. 2009), to support her claim that, "[w]hen the record contains sworn evidence demonstrating a parent's income from a particular source, the trial court must either incorporate that income into the Rule 32[, Ala. R. Jud. Admin.,] calculation or explain why it is not reflective of the party's actual income." The mother's brief, p. 18.

10

The mother's reliance on <u>Hubbard-Hall</u> and <u>Wright</u> is, however, misplaced because those cases do not stand for the principle for which they are cited. Moreover, contrary to the mother's contention otherwise, the trial court provided the basis for its decision to reject the father's assertion in his personal financial statement to RBC that he earned $30,000 per month. At the postjudgment hearing, when discussing its justification for rejecting the father's personal financial statement to RBC as accurate evidence of the father's monthly gross income, the trial court stated:

> "That's what I 'm -- and that's why I think he lied on his bank application. If I thought that he was telling the truth on the bank application, then I would have -- I would have assigned him thirty thousand dollars. So the fact -- the fact that you-all brought evidence in about his health condition, about the con -- the state of affairs about chiropractors and all of that led me to believe that he probably wasn't making thirty thousand dollars, that he fudged those figures to get an advantage at the bank; or I could have said, Hmm, I don't know if he really fudged those figures if he's that sick, he really has thirty thousand dollars. Those are the kind of issues I have to wrestle with 'cause he was -- the testimony was he was making inconsistent statements, and that's a problem. That's a problem."

Because the mother has failed to establish that the trial court had a duty to reconcile the father's financial statement or to reconcile his discovery responses regarding his income, we reject the mother's contention that

11

the trial court's failure to do so constitutes reversible error. See Rule 28(a)(10), Ala. R. App. P. (requiring an appellant arguing that a trial court has committed a reversible legal error to present the appellate court with relevant legal authority demonstrating that error; if the appellant fails to do so, the appellant waives the argument).

The mother next contends, albeit in different terms, that the trial court erred when it failed to impute additional income to the father to account for his personal expenses that Sokol paid. When determining the income earned by a self-employed parent, Rule 32, provides, in pertinent part:

> "(3) Self-employment income.
>
> "(a) For income from self-employment, rent, royalties, proprietorship of business, or joint ownership of partnership or closely held corporation, 'gross income' means gross receipts minus ordinary and necessary expenses required to produce this income, as allowed by the Internal Revenue Service, with the exceptions noted in subsection (B)(3)(b).
>
> "(b) 'Ordinary and necessary expenses' does not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support."

Moreover, Rule 32(B) provides that expense reimbursements or in-kind payments a parent receives shall be included in that parent's income if the payments are "significant and reduce personal-living expenses."

The mother primarily relies on <u>Sutchaleo v. Sutchaleo</u>, 228 So. 3d 475 (Ala. Civ. App. 2017), to support her contention that the trial court erred to reversal when it failed to include in the father's gross monthly income expense reimbursements or in-kind payments that the father received from Sokol. In <u>Sutchaleo</u>, the wife appealed a judgment entered by the Calhoun Circuit Court divorcing her and the husband. 228 So. 3d at 477. In pertinent part, the divorce judgment awarded the wife "placement" of a child born of the marriage and ordered the husband to pay to the wife $500 per month as child support. On appeal, the wife argued that the husband had used a business checking account to pay for his cellular-telephone service, his monthly rent, his monthly bankruptcy-plan payments, his gambling debts, and gifts for his girlfriend and that those amounts should have been included in the husband's monthly gross income. 228 So. 3d at 480. This court stated:

> "The husband testified that he had paid his rent and his Chapter 13 bankruptcy payments out of his personal account, although, he said, he had not done that 'in the beginning.' The husband also testified that he paid for his cellular-telephone

13

service from the business account, but, he stated, he uses that telephone for business as well as personal reasons. The husband testified that payments from the business account to Coach, a retailer, on July 24, July 27, and July 30, 2015, that totaled $400.46 had been for gifts for his then girlfriend. The husband also testified that, in addition to the $42,621 he had deposited from the business account into his personal bank account, he had occasionally paid additional personal expenses, such as gambling expenses, from the business bank account. The husband did not recall the exact amount of those payments, but he testified that an approximate total of $7,350 for those payments was '[p]robably right.' When asked about an additional $9,112 cash withdrawal from the business account, the husband stated: 'I don't know. Maybe I did play some poker that night. I don't know.'

"The [Calhoun Circuit Court] reasonably could have concluded that the business was not paying the husband's rent and bankruptcy payments and that the cellular-telephone bill was a business expense rather than a personal-living expense. The trial court could not, however, have considered the remaining expenditures, which totaled $16,862.46, as anything other than income to the husband because those significant payments from the business had reduced the husband's personal-living expenses. Notably, the husband did not prove that any of those payments had been used for business purposes so as to be excluded from his gross income. See Rule 32(B)(3)[, Ala. R. Jud. Admin.]"

228 So. 3d at 480. Based on the foregoing, this court reversed the divorce judgment with regard to the child-support award and remanded the case to the Calhoun Circuit Court for that court to recalculate the husband's child-support obligation after first including in the husband's income the additional expenditures that the husband's business paid. Id.

14

In the current case, the father testified to various expenses that he had paid through Sokol's checking account with RBC. Those expenses included $537.50 in legal fees paid to Mary Turner Law Group for legal representation during the parties' divorce proceedings; two checks for $1,600, each payable to Lochlear Sport Fish to purchase feed for a farm that the father owns; $125 to Alabama Investigative Services to conduct a background check on the mother's current boyfriend; $35,000 made payable to himself; six checks payable to Bill McGuire, who represents the father in the current action, totaling $8,950; and $5,095 payable to Blacks Carts, LLC, to purchase a golf cart for the father's farm.

Additionally, the father made monthly payments to a Chase credit card from Sokol's business account. Purchases on the Chase credit card included a reoccurring charge of $97 for wildlife cameras; numerous Alacourt charges for $9.99 each; and charges to OnStar, Publix, Northport Pharmacy, Meat Depot, Instacart, Amazon Marketplace, Cancun Bar and Grill, and Big Valley Outdoor. As in Sutchaleo, the father in this case did not prove that any of the purchases Sokol made had been used for business purposes so as to be excluded from his gross income. See Rule 32(B)(3).

We agree with the mother that the trial court erred to reversal when it failed to include in the father's monthly gross income the expenditures that Sokol had paid because those payments were significant and reduced the father's personal living expenses. See Rule 32(B)(4). We therefore reverse the trial court's judgment with regard to its child-support award, and we remand the case to the trial court to recalculate the father's monthly gross income by including the additional expenditures that Sokol paid in accordance with the legal principles set forth in this opinion.

Because we are reversing the judgment and remanding the case for the trial court to recalculate the father's monthly gross income, we pretermit a detailed discussion of the mother's last issue, i.e., whether the father established a material change in circumstances sufficient to modify his monthly child-support obligation. However, because a correct calculation of the father's income is pertinent to the issue whether the father has established a material change in circumstances warranting a modification of his child-support obligation, we instruct the trial court to reconsider this issue once it has completed the recalculation of the father's gross income. If it concludes, based on the father's recalculated

16

gross income, that the father has demonstrated a material change in circumstances warranting a modification of his child-support obligation, the trial court shall then recalculate the appropriate amount of child support in compliance with Rule 32.

## Conclusion

For the foregoing reasons, we reverse the trial court's judgment to the extent that it modified the father's monthly child-support obligation, and we remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.